[No. 13635. Department One. May 17, 1917.]

V. N. SARUSAL, *Respondent,* v. JOHN SEUNG *et al.,*
*Appellants.*[1]

MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — DURATION— TERMINATION. The employment of plaintiff was for the duration of the job, and not from day to day, where he was to secure men to work for defendant on a salvage job, under his own foreman and timekeeper, and to receive for his services in securing and overseeing the men ten cents a day for each man while so employed, it appearing that the job would require 260 to 300 men for fifty days, and that plaintiff was put to considerable expense in securing the men; hence defendant could not arbitrarily terminate the contract before completion of the job and refuse to pay for the men secured by plaintiff while they remained on the job.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 6, 1916, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Modified.

*Turner, Hartge & Turner,* for appellants.

*J. Kalina,* for respondent.

[1] Reported in 165 Pac. 116.

ELLIS, C. J.—This is an action to recover for services claimed by plaintiff to have been performed by him for defendants in pursuance of an oral contract.

It is alleged, in substance, that, about October 1, 1915, plaintiff agreed to furnish to defendants about two hundred and sixty men for a period of about fifty working days to clean salmon cans, the men to receive $1.90 a day, the work to commence about October 18, 1915; that it was understood that plaintiff should have complete charge of the men, should keep books showing the actual work done and number of men employed, should employ a timekeeper at his own expense and keep a correct schedule of the time put in by the men so hired; that it was further agreed that plaintiff should have for his services in the premises ten cents a day for each man so engaged, for a period of about fifty days, during which time the job lasted. It is then alleged that, in performance of this contract, plaintiff secured the services of two hundred and sixty-three men at $1.90 a day each, for about fifty days, took charge of these men, acted as superintendent, employed a timekeeper and paid him from his own funds, and that defendants accepted these services until December 6, 1915; that plaintiff so earned $1,315 under the contract, but defendants have paid him only $552.30, leaving a balance of $762.70 due and unpaid, for which balance, with interest, judgment is prayed.

The cause was tried to the court without a jury. The court found the contract substantially as alleged, and specifically, that it was to continue for a period of about fifty days, or for as long as would be required to complete the job of cleaning cans, and that plaintiff was to receive for his services ten cents a day for each man so engaged during the time the job lasted. The court further found that plaintiff has performed the contract, secured the services of more than two hundred and sixty-three men at $1.90 a day each, some of the men being paid a less rate per day; that he has spent much time and money in securing men, has acted as superin-

tendent and put in a timekeeper; that the work commenced about October 18, and continued to December 9, 1915; that the work was accepted by defendants; that plaintiff has received for his service $183.50, and that there is a balance due him of $500. Judgment was rendered for plaintiff for that sum and costs. Defendants appeal.

The dominant claim of appellants is that the contract was for an indefinite time at daily wages, hence terminable at will by either party; that it was terminated by appellants after three weeks, and that payment was then made in full. A brief review of the evidence touching the purpose and terms of the contract is necessary. Respondent is a Filipino; appellants are Chinese. Nearly all of the witnesses belonged to one or the other of these races. The real meaning intended to be conveyed by many of them is difficult to gather. It sufficiently appears, however, that one Horner was employed by a steamship company and insurance companies to save as much as possible of certain damaged canned salmon. He in turn employed appellant John Seung to procure men for the work. Appellant Seung was to have the management of the men through his own foreman and timekeeper, though Horner had the right to discharge the men as he saw fit. Seung employed a large number of Chinese, but needing more men applied to respondent to secure for the work as many Filipinos as possible. It seems clear that Seung, at the beginning, thought he could attain the best results by keeping the laborers of the two races separate under the direct management of foremen of their own respective kind. The only intelligible evidence as to what the actual contract here involved was is found in respondent's testimony, and is as follows:

"On October 17, 1915, Mr. John Seung came to my place down at 655 Weller street, and he came inside to my store and said, 'Hello, Sarusal.' 'Hello, Mr. Seung,' I said. He said, 'I was here yesterday, but the boy said you are not here.' He said, 'You are working?' I said, 'Yes, sir.' I asked him,

'What you want to see me about, Mr. Seung?' Mr. Seung said, 'I come to see you because I want some boys going to work.' I asked him, 'What kind of work, Mr. Seung?' He said, 'Just cleaning salmon cans. Can you get me somebody?' I said, 'Yes, sir. Well, how much you going to pay the boys wages, Mr. Seung?' I said, and I said, 'You pay by the day or you pay by the month?' He said, 'I pay by the day. I could not pay by the month because this job I think will not last much longer.' Well, I said, 'How much you going to pay the boys wages by the day?' Mr. Seung said, 'I pay the boys wages of a dollar ninety cents per day and I give you ten cents per day for each man,' he said, 'but you are to put your own foreman and your timekeeper to carry all of your men because I want to put my own foreman and time-keeper to carry my men. They are all Chinamen,' he says, 'because I don't want it mixed up because then it is too much trouble,' he says. I said, 'All right, Mr. Seung, I am satis-fied, but can you make me some agreement, Mr. Seung?' Mr. Seung explained to me, he said, 'Well, Sarusal, this kind of job is much different from Alaska because in Alaska the boys are working by the season and they give you agreement for the boys there in Alaska that are working by the season, but this job pay by the day and I think agreement is no use.' Mr. Seung say that. 'That about the only thing I want,' I said. And Mr. Seung said, 'I keep my promise on what I said because my word is more good than an agreement.' Mr. Seung said that. And from that time I engaged to give him men at that time and I told him. 'Everything you said, Mr. Seung, I am satisfied, but I want to know when the boys go-ing to start to work.' Mr. Seung said, 'I come again and let you know when they are going to start to work, but any-how,' he said, Mr. Seung said, 'You get the boys as much as you can,' Mr. Seung say that."

He further testified Seung then told him from two hundred and sixty to three hundred men would be required to finish the job in about fifty days. Though Seung denied that he made any contract with respondent, and insisted that he contracted with another Filipino named Morano, he did not claim that the agreement, with whomsoever made, was materially dif-ferent from that above imported.

Counsel for appellants plant themselves squarely upon the

ground that this was a hiring without any agreement as to duration, with wages payable by the day; that it was, therefore, a hiring by the day, hence terminable by either party at the end of any day. We shall consume no space by an analysis of the many authorities cited, since, if the premises are sound the conclusion, within certain limits, may be conceded. But it seems to us that, in stating the premises, counsel have confused the terms upon which respondent was authorized to employ the men with the terms upon which respondent himself was employed. Respondent was only authorized to hire men by the day. They were to be paid by the day. In actual practice the men were paid at the end of each week, the money for the purpose being furnished to respondent by Seung. Seung himself could only hire men by the day, since Horner had reserved the right to discharge any man hired, and in fact, as the evidence shows, did discharge men at the rate of forty to fifty a day. It is undisputed that men were daily leaving and others were daily taken on.

In contracts of this character, the fact that wages are to be paid by the day, or other given period, is a mere evidential circumstance which, standing alone, tends to prove that there was a hiring for that period. But the presumption so raised is by no means absolute. If there are other circumstances impairing its weight, that circumstance has little probative force and readily yields. *Cronemillar v. Duluth-Superior Milling Co.*, 134 Wis. 248, 114 N. W. 432. Here the very nature of the service undertaken by respondent—the intention of the parties to be gathered from the terms and purpose of the agreement—indicates that, as long as any of the men furnished by him remained on the job, respondent was to receive for his services in securing and overseeing them pay at the rate of ten cents a day for each man while so employed. He was not to be paid a fixed sum by the day as were the men, but was to be paid for each man, and his pay as to each man was to be determined by the number of days that man worked. All this is demonstrated by the stipulations that he was to em-

ploy his own foreman and his own timekeeper at his own expense, and carry his own men on a separate payroll—stipulations wholly inconsistent with the idea of an employment from day to day or by the day. Respondent sent men to Tacoma, Bremerton and Port Blakely to secure men. He employed a foreman and a timekeeper. It is hardly conceivable that he would have gone to this trouble and expense had he understood that his employment was from day to day and terminable at the end of any day. The whole conversation above quoted shows that neither party had any such intention. The very nature of the service undertaken, and the mode of computing his pay so as to make it commensurate with the service rendered, show an employment of respondent for the duration of the job. It follows that appellant had no right arbitrarily to terminate the contract at the end of the third week, as he attempted to do, and by paying respondent for past service avoid liability for the rest of the time contemplated, while retaining men secured by respondent. Respondent, so far as the evidence shows, was ready, able and willing to continue their superintendence through his own foreman and timekeeper, and at his own expense. Appellant could not, merely for his own convenience, relieve respondent from these duties and thus avoid payment for services the fruits of which he still retained.

But appellants urge that respondent is not suing as an employment agent. This is true, but a part of his service was to secure men. Had he been permitted to fully perform his contract, it is obvious that he might have secured all of the Filipinos at any time employed on the job from beginning to end. He would thus have earned, and could have recovered, on the basis of all the men he could secure, as contemplated in the agreement. The fact that he was not permitted to fully perform his contract is no good reason why he should not recover to the extent he was permitted to and did perform it, and to the extent the benefit of that performance was accepted and retained.

It is next contended that there was no evidence that any of
the men secured by respondent remained on the job till it was
completed, and no evidence as to how long any of them re-
mained.  The evidence on this point is far from satisfactory.
It is admitted that, at the end of the first three weeks, Seung
took over the men, placed them under his own foreman and
timekeeper, and thereafter carried them on his own payroll.
Morano, who for the first three weeks acted as respondent's
foreman, and thereafter remained as a common laborer for
Seung, testified that all of these men and more remained to
the end.  But the evidence is overwhelming that throughout
the whole work many men, as high as forty and fifty every day,
were discharged and others hired.  Morano either did not
mean what he seems to have said or his testimony in this re-
gard is incredible.  Ah Fong, appellants' foreman who had
charge of the men after the first three weeks, and who must
have had more accurate knowledge than any other witness,
referring to Sarusal's men, testified:

"Q.  Did most of them come back or most not come back?
A.  Some of them come back.  Lot of them get another job.
Q.  Do you know how many of them came back?  A.  I don't
know, about 30 or 40 men.  Q.  And about how many right
along every day?  A.  Yes, sir; some they work a half day or
two or three days.  No good.  Just take them off the job.
All lazy men take off.  One day Mr. Horner take a whole
bunch off, about, about 80 or 90 men."

He was appellants' witness and plainly appellants' par-
tisan.  It seems to us that he meant to convey the idea that
only thirty or forty of Sarusal's men remained throughout
the work.  One Wadsworth, who was employed by Seung as
a sort of watchman on Saturdays when the men were paid off
during the last four or five weeks of the work, testified that
about one hundred and fifty of Sarusal's men returned after
the first three weeks, but most of them worked but a short
time, and that the men were continually changing.  Though
his testimony is almost as unintelligible as that of the Chinese,

it is evident that he did not mean to imply that all of the one hundred and fifty who returned remained on the work. It seems to us that the only tangible evidence as to the number of men who remained to the end of the work was that of Ah Fong, and that the respondent should only have been allowed pay after the first three weeks on the basis of forty men.

Appellants next contend that the contract was made with Morano, not with respondent, and that Morano, by acquiescing in the taking over of the men by Seung and thereafter continuing in Seung's employment as a common laborer, consented to the termination of the contract. We shall not discuss the evidence on this point further than to say that it strongly preponderates in favor of the court's finding that the contract was made with respondent. Morano was respondent's foreman. There is no evidence that he was respondent's agent in making the contract or that he had any authority to consent to its termination.

Appellants also claim that respondent himself breached the contract by paying to some of the men less than the agreed price per day of $1.90, and that appellant was thus justified in terminating the employment. The evidence that some of the men were paid less than the specified amount was mainly hearsay. On the other hand, respondent, his foreman and his timekeeper all testified positively that every man was paid the full $1.90 a day. The court's finding that some of the men were paid less, seems to us contrary to the preponderance of the evidence.

Upon the whole record, we are satisfied that respondent is entitled to recover an amount equal to ten cents a day for each of the forty men who remained on the work for a period of twenty-nine days, during which it appears the work continued after the first three weeks. This would amount to $116. The cause is remanded with direction to so modify the judgment. Appellants may recover their costs on this appeal.

MORRIS, CHADWICK, MAIN, and MOUNT, JJ., concur.